## Melvin Appeal.

Argued April 12, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*J. Alfred Wilner,* with him *Marjorie Hanson Matson,* for appellant.

*N. R. Criss,* for appellee.

OPINION BY RENO, J., July 19, 1946:

This appeal poses an interesting and important problem relating to the status of appellant as a school teacher in the first class school district of Pittsburgh. Is he a high school teacher as he claims, or a *junior* high school teacher as the school district contends?

A high school teacher is entitled, under a statute, which we shall presently analyze, and appellee's salary schedule, to a minimum annual salary of $1800 and a minimum of *eight* annual increments of $175, while a junior high school teacher is entitled to the same mini-

mum salary and *six* annual increments of $175. Appellant's claim to eight annual increments raised this controversy.

On September 22, 1931, the Board of Education elected appellant: "Teacher, Allerdice Junior High School, at a salary of $1800.00, to date from September 1, 1931; new position." He accepted the position, and in the six years succeeding the school year of 1931-32 received annual salary increments of $175, so that during the 1938-39 school year his salary was $2850. On November 26, 1941, he informed the board's secretary: "as a high school teacher I am entitled to be paid on the basis of Thirty-two Hundred Dollars per year." That is, although he had been elected a teacher in a *junior* high school, he contended he was actually a high school teacher, and therefore entitled to eight instead of six annual increments. Following the receipt of his letter, the board transferred appellant to the Herron Hill Junior High School, admittedly a junior high school, where under protest he has since been teaching. The transfer, appellant contended, was a demotion within the School Code, §1205-A, 24 PS §1161, and demanded a hearing.

The board refused a hearing, but upon appeal the Superintendent of Public Instruction ordered a hearing. From that order the board appealed to the court below which quashed the appeal as interlocutory. The board then held a hearing, heard testimony, and resolved that appellant was elected a teacher in a junior high school and had not been advanced to a higher position, that the transfer did not constitute a demotion, that it was not warranted in filing charges against him, and dismissed his complaint.

He again appealed to the Superintendent, who sustained him, holding that, although elected a teacher in a junior high school, he was actually a high school teacher. On the board's appeal to the court below, it held appellant was a junior high school teacher and that

the transfer was not a demotion. This appeal followed.

I. Whether appellant was demoted, and his right to eight annual increments, depends upon the grade of the position to which he was originally elected. The minutes state that he was elected a teacher in a junior high school, and the minutes constitute the best and the only evidence of his election. *Com. ex rel. Hetrick v. Sunbury School Dist.*, 335 Pa. 6, 6 A. 2d 279. But appellant's basic contention is that while Allerdice was called a junior high school, in fact and under the law it was a high school. No argument is required to demonstrate that a school district cannot evade statutory obligations by calling a junior high school that which the law classifies as a high school.

The School Code, §1701, 24 PS §1581, defines and classifies schools beyond the elementary grades. It provides: "A complete high school course is one requiring four years beyond an elementary course of eight years or six years beyond an elementary course of six years. The Department of Public Instruction shall make such regulations as shall be necessary to insure proper standards for the various grades of the twelve years of the public school program of studies." Omitting the requirements concerning the minimum number of days and teachers, and conformance to regulations of the Department of Public Instruction, the section continues: "Any *high* school giving work for the seventh, eighth, ninth, tenth, eleventh and twelfth years . . . shall be designated a *six-year high school.*

"Any *high* school giving work for the ninth, tenth, eleventh, and twelfth years . . . shall be designated a four-year high school.

"Any *high* school giving work for the ninth, tenth, and eleventh years . . . shall be designated a three-year high school.

"Any *high* school giving work for the ninth and tenth years . . . shall be designated a two-year high school.

"Any *school* ['*high*' *is here omitted*] giving work for the seventh, eighth, and ninth years, or for the seventh, eighth, ninth and tenth years . . . shall be designated a *junior high school.*"[1] (Italics supplied.)

Thus, the criteria which determine the classification of secondary schools are the grades taught in it. As our italicization of the section emphasizes, the line of demarcation runs between high schools and junior high schools, the former being subdivided into separate categories dependent upon the number of years of work offered in them. The term "senior high school", and "junior-senior high school", which frequently occur in this record and sometimes in reported cases, do not appear in the statute. According to the statute, a secondary school is either a junior high school or a high school, and "a complete *high school*" offers four years work after eight of elementary instruction or *six years* after six years of elementary work. The act is clear, explicit and unambiguous. It becomes confusing only when an effort is made to read "senior high school" or "junior-senior high school" into it, or deduce these categories from its terms. We repeat, whatever may be the practice of school authorities and others, or the terminology employed by them, the law itself does not recognize the classifications.

Judged by this standard, Allerdice, although called a junior high school is, and has been, a high school. The associate superintendent of the Pittsburgh schools, in charge of secondary instruction, called as a witness for

---

[1] The provisions of §1701 are here stated in tabular form:

| Years of Work | Grades Taught | Class of School |
|---|---|---|
| 6 | 7, 8, 9, 10, 11, 12 | 6-Year High |
| 4 | 9, 10, 11, 12 | 4-Year High |
| 3 | 9, 10, 11 | 3-Year High |
| 2 | 9, 10 | 2-Year High |
| 3 | 7, 8, 9 or | Junior High |
| 4 | 7, 8, 9, 10 | Junior High |

the board, testified: "The Taylor Allerdice Junior-Senior High School is what is known as a six-year high school, embracing grades 7B through 12A." Disregarding his reference to "Junior-Senior High School", because, as has been demonstrated, that term is unknown to the law, he has properly classified Allerdice as a high school, a six-year high school, since it gives work in the seventh to the twelfth grades. The court below also found as a fact that grades taught at Allerdice "includes the work of grades seventh to twelfth", but it rejected appellant's contention: "Since it is well-known that a senior high school course takes only four years, the extra two years' work offered in a 'six-year' high school are junior high school activities." Upon that premise the court founded its conclusion that Allerdice was "both a senior high school and a junior high school." The conclusion is not supported by the statute. Once it is discovered that a school affords instruction in the seventh through the twelfth grades, it is a high school.

The Department of Public Instruction, of which the Superintendent is the head, has "the power, and its duty shall be: . . . To classify the high schools of the State, upon the basis of the reports of the directors and the State inspectors of high schools, in compliance with the provisions of the school laws . . .": Administrative Code of April 9, 1929, P. L. 177, §1302 (e), 71 PS §352. The superintendent is therefore the authority designated by the legislature itself "to classify the high schools of the State", and although his classification rests partly upon "the reports of the directors", the final determination is his responsibility, and his action transcends and overrides the classifications of local school boards. In this case the Superintendent held that "a secondary school of six years is by law defined as a six-year high school and not as a junior high school or as a junior-senior high school", and upon that basis directed the school district "to reinstate the appellant as a high school teacher and to adjust his salary in accordance

with the provisions of the high school salary schedule of the Pittsburgh School District." The Superintendent's decision is subject to judicial review but, in deference to him as the agent of the legislature, he should be overruled only in the presence of clear and palpable error. We have not discovered error, and we adopt his decision as our conclusion.

The school district relies upon *Wesenberg Case*, 346 Pa. 438, 31 A. 2d 151, where apparently the Superintendent had classified a six-year school as a "six-year junior-senior high school." Whether the school involved in that case was a high school or a combination junior-senior high school was not material. The only question at issue was whether the transfer of a principal from a six-year high school to a junior high school was a demotion, and, since there was no difference in the compensation of the two positions in school districts of the second class, it was held not to be a demotion. The fact that the Superintendent classified that school as a junior-senior high school did not require him to classify Allerdice in the same way. He had a right to restudy the question, and revise the method of classifying secondary schools in the light of a new and corrected construction of the applicable legislation.

The compensation of teachers is prescribed by the School Code, §1210, and the parties have agreed that appellant's rights are regulated by the section as it stood after the amendment of March 12, 1929, P. L. 18, 24 PS §1165. For districts of the first class, it provides minimum salaries and increments for various classes of teachers: (a) elementary teachers; (b) assistant high school teachers; (c) *junior high school* teachers and city normal school training teachers; (d) *high school teachers* and city normal school teachers; and (e) principals of schools of the several grades. Appellee's salary schedule is based upon and follows this section of the act. No mention is made of, and no provision is made for, junior-senior high school teachers, and no distinction is

made between high school teachers in respect to the number of years of work afforded in such high schools. Again the line of demarcation is rigidly drawn between junior high school teachers on the one side and high school teachers on the other. This fortifies our conclusion that secondary schools are either junior high schools or high schools, and that their classification is dependent upon the grades taught in them. Although enacted and amended at different times, there is the utmost harmony between this section and §1701, supra, a consonance which indicates a firm and abiding legislative policy, and the deliberate intent that the class of the school shall determine the compensation of its teachers and that the classification of the school is dependent upon the grades taught in it.

II. When the problem is approached from the standpoint of appellant's teaching record at Allerdice, the result is the same. The Superintendent found as a fact: "Melvin upon assuming his duties was first assigned to grades below the ninth but, as a result of curriculum changes and grade placement of certain subjects taught in the Pittsburgh schools, in 1932 he began teaching commercial subjects in grades both above and below the ninth and continued doing so until December 1937 when his subjects were all to be found above the ninth grade. . . . From the standpoint of actual teaching service he was, therefore, a teacher of senior high school rank and in view of that fact and the fact that a secondary school of six years is by law defined as a six-year high school and not as a junior high school or as a junior-senior high school, we must conclude that for salary purposes as well as for teaching service, the appellant was a 'high school teacher' . . ." The court below found: "Thereafter [1931] he taught seventh and eighth grade or junior high school subjects until 1936, after which time, because of changes in programs and schedules, he was engaged exclusively in teaching senior high school subjects." Neither finding is challenged by either side,

and they are supported by the evidence.[2] Thus, in addition to the status acquired by his election as a teacher in a six-year high school, his case is strengthened by the fact that he has been teaching distinctively high school subjects and grades.

So that, even if it be assumed that Allerdice is, as appellee contends, a high school with junior and senior branches (cf. *Wesenberg Case,* supra, p. 442), then certainly since 1936, if not before, appellant has been a teacher in the senior branch.

III. The assignment to teach advanced studies, the school district insists, was unauthorized by the board and therefore an invalid administrative promotion. In the court below, the trial judge held that the School Code, §403, 24 PS §334, requires that promotions of school teachers be made by the affirmative vote of the majority of the board, and entered upon the minutes, a provision not followed in the instant case. That finding, and the conclusion: "There can be no valid informal promotion such as could result from the assignment to and performance of advanced duties", were rejected by the court en banc as "at variance with the law".

The school board now relies upon another provision of §403, which requires the same formality in: "Fixing salaries or compensation of officers, teachers, or other appointees of the board . . ." It argues that a promotion involves an increase, and therefore requires the fixing of appellant's salary at a higher amount, and that this could be accomplished only in accordance with §403.

Because the question is, in view of our conclusion upon the basic point of the case, unnecessary to the de-

---

[2] The Superintendent found that appellant began to teach advanced grades in *1937*; the court below found *1936* as the date. In the record appears a statement by appellee's solicitor: "For the purpose of simplifying the record we admit that after September *1935* the subjects taught by Mr. Melvin were all in the 10th, 11th and 12th grades." The exact date is not important.

cision, we lay it to one side. It would seem that since the minimum salary of high school and junior high school teachers is the same, $1800, and the only difference between them is that the former are entitled to eight annual increments while the latter are entitled only to six, advancement from one class to another involves no change of salary, and only increases the number of increments. There might be no occasion for again fixing a teacher's salary when he is assigned to teach higher subjects, nor to fix the number of increments. It has been recognized that "salary" and "increments", for some purposes, are separate and may be properly considered distinct. *Bishop v. Bacon,* 130 Pa. Superior Ct. 240, 196 A. 918. Since the number and the amount of the increments are fixed by statute, there might be a base for the argument that they automatically enure to the teacher without a new contract or further action of the board. Cf. *Wesenberg Case,* supra, p. 446.

But, without deciding that question, we hold that since appellant was elected a teacher in a high school and taught high school grades, he was, in the language of the Superintendent, "Entitled to a continuance of salary increments until he had attained the top of the regular salary schedule for Pittsburgh high school teachers, namely, $3200, instead of being limited to the maximum of $2850 provided for junior high school teachers . . .", and that his transfer to the Herron school was a demotion.

IV. As we stated, this is an important case. At the argument, we were informed that a decision adverse to the board would result in an additional $86,000 in the district's annual salary budget. That circumstance has laid a heavy responsibility upon us which we have endeavored to discharge faithfully. The end-result is that teachers in Pittsburgh will henceforth be paid compensation commensurate with their rank and services. This will not be wholly displeasing to the board. At the meeting which adopted the resolution dismissing appellant's

complaint, a distinguished member of the board said: "In voting 'Aye' I desire to state that I am in favor of equal pay for equal work and I know that many members concur. I hope that serious consideration will be given by the Board in the near future to any inequalities in pay for comparable services which now exist so that such inequalities may be corrected." Other members expressed their concurrence. This decision should contribute to the efforts of the board to attain that desirable objective.

The order of the court below is reversed at appellee's costs, and the order of the Superintendent of Public Instruction is reinstated.

DITHRICH, J., concurs in the conclusion solely upon the principle of equal pay for equal work.

RHODES, J., dissents.

---

DISSENTING OPINION BY RHODES, J.:

The issue in this case is a very simple one. I think it is controlled in principle by *Strine v. Upper Merion Township School District*, 149 Pa. Superior Ct. 612, 27 A. 2d 552. Appellant, on May 28, 1931, applied for a position in the Pittsburgh public schools, which involved the teaching of junior high school subjects. He was elected as a junior high school teacher, he accepted the position, and he thereupon taught junior high school subjects. He eventually was consentably assigned to teaching high school grades. Appellant, recognizing his status as a junior high school teacher, on June 6, 1938, made an application for a transfer or promotion from a junior rating to a senior rating. This requested promotion was never granted. I would therefore affirm the order of the court below.