Smith, Appellant, *v.* Darby School District.

Argued January 8, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Donald W. Lehrkinder,* with him *Edward D. Mc-Laughlin,* for appellant.

*Howard M. Lutz,* with him *Edward H. Bryant, Jr.,* and *Lutz, Fronefield, Warner & Bryant,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 25, 1957:

Appellant was for many years the Supervising Principal of Darby Township School District with an annual salary of $4,775. The Darby Township School District, a 4th class school district, on July 6, 1954 became a 3rd class school district.[1] On July 13, 1954 the school board abolished the position of Supervising Principal, created the office of Associate Superintendent,[2] elected someone other than appellant to that of-

---

[1] The regularity and propriety of the change in classification are not questioned.

[2] In lieu of a District Superintendent, a 3rd class district *may* elect an Associate Superintendent but, if that district has a Supervising Principal, a prerequisite to the election of an Associate Superintendent is the approval of the county board of school directors. There is no statutory provision prohibiting a 3rd class district having both an Associate Superintendent and a Supervising Principal. (Public School Code of 1949, Art. X, §§1071-1083, inc., Art. XXI, §2107, 24 PS §§10-1071-83, inc., §21-2107; Act of August 17, 1951, P. L. 1281, 24 PS §§10-1072.1a-1073, inc.: Act of Septem-

fice, and assigned appellant to the position of Principal of the Junior High School at the same salary but without the annual increment.

Appellant, contending that the board's action constituted an unlawful demotion both in type of position and in salary (the latter because of the loss of the annual increment), requested a hearing before the school board. From the board's failure[3] to grant a hearing he appealed to the Superintendent of Public Instruction. After oral argument, the Superintendent, in a written opinion, concluded that he lacked jurisdiction to hear the appeal. An appeal was then taken to the Court of Common Pleas of Delaware County and that court made absolute a rule to show cause why the appeal should not be dismissed. From that order this appeal ensued.

On this appeal three questions arise: (1) did the school board's action of July 13, 1954 abolishing the position of Supervising Principal and assigning appellant—then Supervising Principal—to the position of Junior High School Principal constitute a demotion in type of position or in salary, or both; (2) if the board's action constituted a demotion either in type of position or in salary, or both, was such demotion in violation of Article XI, §1151 of the Public School Code of 1949;[4] (3) has the appellant pursued the appropriate remedy to enforce his rights?

A demotion of a professional employee is a removal from one position and an appointment to a lower position; it is a reduction in type of position as compared

---

ber 29, 1951, P. L. 1572, §4, 24 PS §10-1074; Act of January 14, 1952, P. L. 2081, §1, 24 PS §10-1072.1a).

[3] The learned court below considered that the school board had *refused* the request for a hearing. The record indicates the board *ignored* the request.

[4] Act of March 10, 1949, P. L. 30, 24 PS §11-1151.

with other professional employees having the same status: *Simmler v. Philadelphia et al.,* 329 Pa. 197, 202, 198 A. 1; *Smith v. Philadelphia School District,* 334 Pa. 197, 205, 5 A. 2d 535; *Wesenberg Case,* 346 Pa. 438, 441, 444, 31 A. 2d 151; *Pittsburgh School District Appeal,* 356 Pa. 282, 286, 287, 52 A. 2d 17; 78 C.J.S. §205, p. 1099.

As Supervising Principal the appellant supervised *all* the schools in the district; in his new position, he supervises only *one* school in the district. Different qualifications are required of a Supervising Principal than are required of a Principal of a Junior High School. While one qualified to be a Supervising Principal is qualified to perform the duties of a Principal of a Junior High School, yet if the situation be reversed, the lack of qualifications of the latter to perform the duties of the former instantly appears and compels the conclusion that appellant's assignment did effect a demotion in type of position. The positions of Principal and Supervising Principal are dissimilar and not of the same or a comparable class. While in this case the salary of the Supervising Principal and that of Principal of the Junior High School happens to be the same (with the exception of the annual increment), a demotion in type of position means something more than a reduction in salary. To demote is to reduce to a lower rank or class and there may be a demotion in type of position even though the salary remains the same.

Various statutory provisions recognize a distinction between a Supervising Principal and a Principal (even in the tenure provisions) and place them in separate categories as to salary, increments, qualifications and duties. The school board by its assignment has changed appellant's classification and placed him in a subordinate class. As Supervising Principal the ap-

pellant was second in command of the affairs of the district, whereas now, as Principal, he is at most third in command.

On previous occasions our courts have considered the problem of a demotion either in type of position or salary. In *Dugan v. Dupont Borough School District*, 359 Pa. 590, 595, 59 A. 2d 888, a Supervising Principal assigned as Principal of an elementary school was held to have been demoted. In *Commonwealth ex rel. Ricapito v. Bethlehem School District*, 148 Pa. Superior Ct. 426, 433, 434, 25 A. 2d 786, Ricapito, a music teacher, was appointed "Assistant Principal" of a high school with the title of "Dean" and the following year the board abolished this office and assigned Ricapito as a music teacher; the Superior Court held that Ricapito had not been demoted. In *Houtz Appeal*, 361 Pa. 537, 65 A. 2d 420, a Supervising Principal resigned and Houtz—ineligible to be appointed Supervising Principal—was assigned as "Principal of Schools" under a contract to "teach" under "supervision and authority of . . . [a] Supervising Principal"; later the board stated its intent to appoint a Supervising Principal and abolish the office of "Principal of Schools". After a prior appeal to this court (357 Pa. 621, 55 A. 2d 375), Houtz was assigned to duty as Principal of elementary schools. The court held that Houtz had not been demoted. In *Ritzie Appeal*, 372 Pa. 588, 94 A. 2d 729, the court held that the assignment of Ritzie from the newly created position of Principal of elementary schools to the position of a teacher was not a demotion.[5]

---

[5] In other jurisdictions the following assignments have been held to constitute a demotion in type of position: vice-principal to a teacher in elementary schools (*Klein v. Board of Education*, 1 Cal. (2d) 706, 37 P. 2d 74) ; principal of an evening school to teacher of a day high school (*Anderson v. Board of Education*,

The tenure provisions of the School Code do not infringe upon the general power of a school board to assign professional employees to particular classes or particular schools or positions in accordance with its judgment and discretion reasonably exercised. A professional employee, under the tenure provisions of the Code, does not acquire a vested right to teach in any certain class or in any certain school: *Commonwealth ex rel. Wesenberg v. Bethlehem School District et al.*, 148 Pa. Superior Ct. 250, 256, 24 A. 2d 673. The only limitation on a school board's general power is that the work to which a professional employee is assigned be of a rank or class equivalent to that by which his permanent status was acquired and one for which he is qualified.

The board's assignment of appellant to act as Principal of the Junior High School was not to a rank or class equivalent to that by which his permanent status was acquired, and therefore, he has been demoted in type of position. Cf: *Streibert v. York School District Directors*, 339 Pa. 119, 14 A. 2d 303; *Houtz v. Coraopolis Borough School District et al.*, 357 Pa. 621, 624, 625, 55 A. 2d 375.

Appellant also contends that, even though in his new position he is paid the same basic salary he received as Supervising Principal, yet, because of the change in position from Supervising Principal to Junior High School Principal, he suffered a loss of an annual increment of $250 and this loss constituted a demotion in salary. By statute (Act of December

*etc.*, 126 Cal. App. 514, 15 P. 2d 774); teacher of physical education in senior high school to teacher of physical education in junior high school (*Hodge v. Board of Education*, 22 Cal. App. 2d 341, 70 P. 2d 1009); principal of high school to teacher in grade school (*State ex rel. Bass v. Vernon Parish School Board*, 194 So. 74).

27, 1951, P. L. 1776, §3) certain minimum service increments are provided and an examination of this statute indicates that the legislature has provided—applicable at that time—an annual service increment of $200 for a Principal and of $250 for a Supervising Principal.

While it is true that a "salary" and "increment" for some purposes are separate and may be probably considered distinct (*Bishop v. Bacon,* 130 Pa. Superior Ct. 240, 196 A. 918), yet as Judge RENO pointed out in *Melvin Appeal,* 159 Pa. Superior Ct. 328, 337, 48 A. 2d 108 (reversed on other grounds in *Pittsburgh School District Appeal,* supra), since the number and amount of increments are fixed by statute, it can be argued that they automatically enure to the teacher without a new contract or any further action of the school board. In *Weber et al. v. Board of Education of Trenton,* 127 N. J. L. 279, 21 A. 2d 808, the New Jersey Court of Errors and Appeals stated: "The annual increments were integral parts of the salaries, effective when the designated year of service had been attained, that having been the contract with the teachers. It is a statutory requirement that there be a salary schedule, or in its absence, a specific contract with the teacher. The annual increment in a salary schedule is not a prospective increase, subject each time to control of the local authorities before it becomes absolute. It is integrally part of the salary, vesting contractually and becoming operative in the various stages of time spaced by the schedule." Cf: *Greenway v. Board of Education of Camden,* 129 N. J. L. 461, 29 A. 2d 890. Had appellant remained as Supervising Principal he would have been entitled, under the legislative fiat, to an increment of $250 annually up to the maximum number allowable; loss of his position carried with it a loss of that increment and to that extent

his salary has been reduced. When appellant was demoted in type of position and such demotion carried with it a loss of the annual increment there was a demotion in appellant's salary.

Appellant having been demoted both in type of position and salary, is such demotion in violation of the statute? Article XI, §1151 of the Public School Code of 1949, supra, provides, inter alia, as follows: ". . . but there shall be no demotion of any professional employe either in salary or in type of position without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe."

This provision of the School Code does not prohibit a school board from demoting a professional employee, but simply provides that a nonconsensual demotion shall be subject to a right to a hearing. A comparison of the statutory provisions covering the dismissal of a professional employee with the provision covering the demotion of such employee indicates that the former set forth the reason for which an employee may be dismissed and the procedure to be followed, whereas the latter merely provides the procedure to be followed. The statute provides "why" and "how" an employee may be dismissed but only "how" an employee may be demoted. Any professional employee may be demoted under the statute provided that such demotion takes place only after a hearing and that such demotion not be made in an arbitrary or discriminatory manner.

Appellant's position, in substance, is that since the office of Supervising Principal is a so-called "mandated" office the board has no right to demote him, the incumbent thereof. Our courts, interpreting the provisions of the Public School Code of 1949 and the

Teachers Tenure Act of 1937 relating to the subject of demotion, have employed the terms "mandated" and "non-mandated" in reference to offices and positions in the school system. The late Mr. Justice (later Chief Justice) DREW first used the phrase in *Streibert v. York School District Directors*, supra, p. 120, when he termed the office of "Dean of Girls" "non-mandated". This phrase was used later by the late President Judge KELLER in *Commonwealth ex rel. Ricapito v. Bethlehem School District*, supra, pp. 433, 434 in designating the office of "Dean" of a high school as a "non-mandated" office and in defining a "non-mandated" office as one which is not included within the category of "professional employees" (as defined in the School Code of 1911, §1201, as amended by the Teachers' Tenure Act, Acts of April 6, 1937, P. L. 213, §1 and June 20, 1939, P. L. 482, §1) whose tenure is specifically protected. In that decision the court held that the Teachers' Tenure Act of 1937, as amended, distinguished between a "Principal" and a "Supervising Principal" but evidenced no intention to include as a "mandated" office the positions of an "Assistant to the Principal" or "Assistant Principal or Dean", citing *Streibert v. York School District Directors*, supra, and *Commonwealth ex rel. v. Sunbury School District*, 335 Pa. 6, 6 A. 2d 279.

An examination of these decisions indicates that the criterion for determining whether a position or office[6] is or is not "mandated" depends upon whether

---

[6] A professional employee, despite the attainment of permanent tenure under the statute, holds a position, not an office, and is an employee and not an officer: *Teachers' Tenure Act Cases*, 329 Pa. 213, 197 A. 344, 355; *Commonwealth ex rel. Ricapito v. Bethlehem School District*, supra; pp. 433, 434; *Coble v. Metal Township School District*, 178 Pa. Superior Ct. 301, 304, 116 A. 2d 113; *Commonwealth v. Frank*, 4 Pa. County Court 618.

or not the title of the incumbent to the position or office is specifically covered by the phrase "professional employees" in the statute. The statute defines the term "professional employees" to include certified teachers, supervisors, supervising principals, principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counsellors, school nurses and such school secretaries as are selected on the basis of merit determined by eligibility lists.

Over the years our courts have upheld the right of a school board to abolish a position or office and assign the incumbent thereof to a new position or office: *Commonwealth ex rel. Ricapito v. Bethlehem School District,* supra; *Houtz Appeal,* supra; *Ritzie Appeal,* supra; *Streibert v. York School District Directors,* supra; *Trexler v. Hatfield Joint School Board,* 71 Montg. Co. L. Rep. 48. From the language used in some of these decisions and the fact that all the positions or offices abolished therein were so-called "non-mandated" positions or offices, by implication, at least, an interpretation of the statute has arisen to the effect that a professional employee may be assigned from an abolished position or office of the so-called "non-mandated" group without effecting a demotion but an assignment from an abolished position or office which is of the "mandated" group does effect a demotion.

The instant case presents an inquiry into the right of a school board to abolish a "mandated" office or position and to assign the incumbent thereof to another position or office even though such assignment causes a demotion both in type of position and salary for the employee. The pursuit of such inquiry requires a recognition that the legislature, entrusted by the Constitution of 1874 with the duty of maintaining an efficient public school system, has delegated this

duty, under legislative supervision, to the various school districts and in late years, through the tenure provisions of the School Code, has provided for the protection of professional employees from unjust or improper suspension, dismissal and demotion from their duties by the school district. It is our duty to determine to what extent, if any, the legislature intended the primary duty of the school districts to yield to the protective provisions of the School Code affecting professional employees.

"The Constitution of 1874 . . . directed the legislature to maintain 'a thorough and efficient system of public schools': Article X, Section 1. The school system, or the school districts, then, are but agencies of the state legislature to administer this constitutional duty": *Wilson et ux. v. Phila. School District et al.*, 328 Pa. 225, 231, 195 A. 90; *Teachers' Tenure Act Cases*, supra, pp. 223, 224. In *Ehret v. Kulpmont Borough School District*, 333 Pa. 518, 522, 5 A. 2d 188, this court stated: "The Constitution has placed the educational system in the hands of the legislature, free from any interference from the judiciary save as required by constitutional limitations. We may only, in problems such as this, ascertain the legislative intent."

Time and again our courts have stated that the purpose of the tenure provisions of the School Code is the maintenance of "an adequate and competent teaching staff, free from political and personal arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction": *Teachers' Tenure Act Cases*, supra, p. 231; *Walker's Appeal*, 332 Pa. 488, 491, 2 A. 2d 770; *Ehret v. Kulpmont Borough School District*, supra, p. 524; *Smith v. Philadelphia School District*, supra, p. 204; *Commonwealth ex rel. v. Sunbury School*

*District,* supra, p. 12; *Welsko v. Foster Township School District,* 383 Pa. 390, 393, 119 A. 2d 43; *Coble v. Metal Township School District,* supra, p. 304.

In ascertaining the legislative intent on the subject of the demotion of any professional employee we must bear in mind the duty of the public school authorities to administer thoroughly and efficiently the public school system as well as the obligation imposed by the tenure provisions of the statute that professional employees be free from political or arbitrary interference. Did the legislature intend that professional employees holding so-called "mandated" offices should be beyond the power of a school board to demote even if such demotion became necessary for a more efficient administration of the affairs of the school district or rather did the legislature intend that even this class of employees should be subject to demotion, if such demotion became necessary for a more efficient administration of school affairs, and, if such demotion arose without any political or arbitrary interference?

This court has said: "By the School Code, the school directors are given power to administer the public school system; they are commanded to employ the necessary qualified teachers to conduct school affairs and keep the schools open": *Ehret v. Kulpmont Borough School District,* supra, p. 523; *Walker et al., v. Scranton School District,* 338 Pa. 104, 108, 12 A. 2d 46; *Houtz Appeal,* supra, p. 541. "It is the administrative function of the school directors and superintendents to meet changing educational conditions through the creation of new courses, reassignment of teachers, and rearrangement of curriculum.": *Jones v. Holes et al.,* 334 Pa. 538, 542, 6 A. 2d 102; *Mazzei v. Scranton School District,* 341 Pa. 255, 260, 19 A. 2d 155; *Wesenberg Case,* supra, p. 444; *Welsko v. Foster Township School District,* supra, p. 394.

The right of a school board to make reasonable rules and regulations,[7] reassign teachers and take other steps necessary for a proper administration of the school system has been recognized on many occasions: *Jones v. Kulpmont Borough School District,* 333 Pa. 581, 3 A. 2d 914, upheld the right of a school board to make a regulation requiring teachers to be residents of the district, a violation whereof might constitute ground for dismissal; *Ehret v. Kulpmont Borough School District,* supra, approved the suspension of a teacher of a kindergarten where the kindergarten department was abolished for a proper reason; *Smith v. Philadelphia School District,* supra, upheld the right of a school board to effect a general reduction of the salaries of all the teachers in a district without individual discrimination even though for all the teachers a demotion in salary was thereby effected; *Streibert v. York School District Directors,* supra, upheld the right of a school board to abolish the office of "Dean of Girls" and assign the incumbent thereof to teach; *Wesenberg Case,* supra, sanctioned the transfer of a professional employee from principal of a six year junior-senior high school to principal of a three year junior high school; *Ambridge Borough School District, etc. v. Snyder,* 346 Pa. 103, 29 A. 2d 34, sustained the right of a board to make reasonable rules and regulations concerning maternity leave for female teachers; *Miller v. Stoudnour,* 148 Pa. Superior Ct. 567, 26 A. 2d 113, allowed a school board to eliminate a science

---

[7] "The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all superintendents, teachers and other appointees or employes during the time they are engaged in their duties to the district . . . .": Public School Code of 1949, supra, §510, 24 PS §5-510.

department, due to financial reasons and a low average pupil load, and to rearrange the courses of study even though such action meant the elimination of a science teacher.

School authorities must be given broad discretionary powers to ensure a better education for the children of this Commonwealth and any restrictions on the exercise of these powers must be strictly construed on the basis that the public interest predominates and private interests are subordinate thereto: *Walker et al. v. Scranton School District,* supra. The legislature has directed the school boards to employ such qualified employees as are necessary to maintain an efficient and competent school system and the determination of what employees are necessary rests in the school board's sound discretion. The number and character of departments, positions, offices and teachers necessary in any particular district are matters which lie within the sound discretion of the school board. The school board having exercised its discretion and having organized the departments, positions and offices, it does not follow that all of the positions established become sacrosanct because the board may find, at a later time and as conditions change, that the welfare of the school system requires that a particular department, position or office must be abolished. No position or office or department is indispensable under the school system.

The power of creation and abolition of departments, positions and offices must rest with the school authorities. The only limitation which should be imposed on the exercise of this power should be that the board must act intelligently, impartially and with sound discretion ever mindful of the high principles enunciated in the Constitution and the Public School Code concerning our educational system. "Executive officers

of municipal and school districts have many discretionary powers in performing their functions; ordinarily courts will not interfere with this exercise, but if it appears their action is based on a misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice, courts will intervene to prevent an abuse of power adverse to public welfare"; *Hibbs v. Arensberg*, 276 Pa. 24, 26, 119 A. 727. In *Regan et al. v. Stoddard et al.*, 361 Pa. 469, 65 A. 2d 240, we approved the following language of the lower court: " 'We must reiterate that a court is not a super Board of directors with superior knowledge of the administration of business, finance, or the science of pedagogics. It would be presumptuous to superimpose judicial control upon the exercise of discretion by trained educators. The legislature has vested wide powers in the Board of school directors. . . . Our appellate courts repeatedly have affirmed their exercise of this discretion. Day v. Amwell Township School District, 283 Pa. 248; Hibbs v. Arensberg, 276 Pa. 24; Lamb v. Redding, 234 Pa. 481. In the latter case, judicial interference was confined to those cases where it was "apparent that it is not discretion that is being exercised but arbitrary will or caprice".' "

It was within the general power and discretion of the appellee school board to determine whether the abolition of the position of Supervising Principal and the creation of the office of Associate Superintendent would tend toward a more efficient administration of the school system in the Darby Township School District. The determination that such action was necessary, if arrived at after a consideration of the educational needs of the school district rather than on any arbitrary or improper basis, was within the power of the school board even though the result of its action

was the abolition of a so-called "mandated" office and even though it resulted in the demotion of appellant in type of position and in salary.[8]

Even though we find that appellant has been demoted and even though the propriety of such demotion —at least initially—lies within the discretion of the school board, yet the appellant has a just cause for complaint in that he was not granted a hearing before the school board. The statute is explicit that where a demotion has taken place, without the consent of the professional employee, such demotion shall be subject to the right to a hearing before the school board and an appeal lies in the same manner as provided in the case of the dismissal of a professional employee.

By reference to the statutory remedy "in the case of the dismissal of a professional employee" (Art. XI, §1131 of the Public School Code of 1949, supra), we find that a dismissed teacher is entitled to a hearing and, after the hearing, if the teacher feels aggrieved by the school board's action an appeal lies to the Superintendent of Public Instruction within 30 days of notice of the board's decision; the Superintendent of Public Instruction then fixes a day for a hearing with notice to the parties in interest. At this hearing it becomes the Superintendent's duty to review the official transcript of the record of the school board hear-

---

[8] It will be noted that, while there is no statute prohibiting the employment in a 3rd class district of both an Associate Superintendent and a Supervising Principal, yet, by implication, both from the statute prohibiting a Supervising Principal and a District Superintendent in the same district, supra, Note 2, and the statute requiring county school board approval prior to the election of an Associate Superintendent in a district which has a Supervising Principal, supra, Note 2, a 3rd class district can elect an Associate Superintendent and also retain a Supervising Principal. The wisdom and practicality of having both positions is a matter within the board's, not within the court's, discretion.

ing, to hear and consider any additional testimony as he may deem advisable, and, after hearing argument and after a review of the testimony, to enter such order affirming or reversing the school board as appears just and proper. Article XI, §1132 of the Public School Code, supra, as amended by §4 of the Act of May 9, 1949, supra, provides that within 30 days of notice of the Superintendent's decision an appeal may be taken to the court of common pleas of the county in which the school district is located and the court shall fix a date for a hearing which shall be de novo. After hearing, the court shall make whatever order it considers just, either affirming or reversing the action of the Superintendent of Public Instruction and stating plainly whether the professional employee is to be discharged or returned to duty.

The appellant requested a board hearing but the board took no action on his request. He then appealed to the Superintendent of Public Instruction. While no testimony was taken, oral argument was held and briefs were submitted to the Superintendent of Public Instruction and he then denied appellant's request for a hearing and dismissed the appeal on the ground that there was no demotion under the Public School Code of 1949, supra, and therefore, appellant was not entitled either to a board hearing or an appeal to the Superintendent of Public Instruction. The learned court below did not confine itself to the question of procedure but in order to determine the procedural question considered the merits of the controversy; upon finding appellant had not been demoted in type of position and/or salary, the court made absolute a rule dismissing the appeal from the Superintendent of Public Instruction.

Appellee urges that the remedy given by the Public School Code of 1949 is an exclusive remedy and,

since the School Code does not provide for a hearing where an employee is not demoted, and since appellant was not demoted, he, therefore, is without a remedy. Appellee acknowledges that a professional employee, if demoted in type of position or salary, is entitled to a hearing under the School Code, but argues that if, however, before a hearing is held, the school board is of the opinion that the professional employee has not been demoted in type of position or salary, then he is not entitled to a hearing. Under this view a board could arbitrarily conclude the employee had not been demoted and, in the absence of a demotion, a fortiori no right to a hearing under the statute would exist. We do not read the statute in this light nor do we conceive that the legislature ever intended such an anomalous result.[9] When a professional employee claims he has been demoted in type of position and/or salary he is entitled to a board hearing just as a professional employee claiming an unlawful dismissal is entitled to a hearing. After hearing, the right of appellate review by the Superintendent of Public Instruction and by the various courts would naturally follow. The language of this court in *Ritzie Appeal,* supra, p.

---

[9] "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this court has followed that purpose, rather than the literal words": *United States v. American Trucking Ass'n., Inc. et al.,* 310 U. S. 534, 60 S. Ct. 1059, 1063, 84 L. Ed. 1345; *Swick v. Tarentum Borough School District,* 141 Pa. Superior Ct. 246, 251, 14 A. 2d 898.

592: "What happened to Ritzie was not a demotion in salary within the meaning of §1151 of the statute. He was not entitled, therefore, to a hearing before the Board or to an appeal to the Superintendent of Public Instruction or to a hearing de novo in the court of common pleas." is used by appellee out of context with the factual situation in that case. *Ritzie Appeal* is inapposite.

In *Wesenberg Case,* supra, p. 441, the late Mr. Justice PARKER, referring to the statutory remedy of an employee claiming to have been demoted, stated: "Appellee did not invoke that remedy and ask for a hearing on the question of demotion. If he had done so and at the same time assumed the new assignment . . . he could have safeguarded his rights under the statute and avoided the risk of dismissal." Cf: *Smith v. Philadelphia School District,* supra, 334 Pa. 197, pp. 205, 206; *Walsh's Appeal,* 144 Pa. Superior Ct. 342, 345, 346, 19 A. 2d 608.

When a professional employee claims that he has been demoted it is the school board's duty to grant him a hearing. At that hearing two questions are before the school board: (1) whether or not the professional employee has been demoted either in type of position or salary, and, (2) in the event the professional employee has been demoted, the reason for such demotion must be made clear and apparent.[10]

---

[10] It should be noted that an Associate Superintendent is a public officer, not a professional employee and is not covered by the tenure provisions of the School Code (*Storm v. School District of Borough of Moscow,* 329 Pa. 213, 239, 197 A. 344; *Commonwealth ex rel. Ricapito v. Bethlehem School District,* supra, pp. 433, 434. On the other hand, a Supervising Principal is not a public officer but a professional employee covered by the tenure provisions of the School Code (*Storm v. School District of Borough of Moscow,* supra). Statutory provisions indicate that an Associate Superintendent and a Supervising Principal perform practically identical

In view of our opinion that appellant has been demoted both in type of position and salary, the only purpose to be served by a hearing before the board in the instant case is the determination whether the abolition of the office of Supervising Principal with the resultant demotion of appellant was occasioned by a need for a more efficient administration of school affairs or because of some arbitrary or discriminatory reason on the part of the board. While there is a presumption that the board has acted in a valid and proper manner, (*Vernon Township v. United Natural Gas Co.,* 256 Pa. 435, 100 A. 1007; *Wesenberg Case,* supra, p. 445; *Winger v. Aires,* 371 Pa. 242, 246, 89 A. 2d 521), yet the appellant should have an opportunity to be heard before the board and at such hearing to present any evidence which he may have indicating that the board's action resulted from arbitrary or discriminatory reasons. The burden will be on the appellant to prove the impropriety of the board's action; *Hibbs v. Arensberg,* supra, p. 26; *Campbell v. Bellevue Borough School District,* 328 Pa. 197, 202, 195 A. 53.

The order of the court below is reversed and the School Board of the School District of the Township of Darby is directed to hold a hearing in accordance

---

duties; any dissimilarity is a distinction without a difference. Cf: *Storm v. School District of Borough of Moscow,* supra, p. 239. The similarity of duties of both officials and the testimonial in the record to appellant's fidelity to his duties over a long period of time give rise to speculation whether a change in district classification warranted the exchange of a tried and proven educator for a new and unproven one. The wisdom, however, of such action is for the school board, not this court. In addition, an Associate Superintendent can be removed at the board's will every 4 years, whereas a Supervising Principal cannot be removed except for cause. The result is that the present highest ranking school official in the district can be removed quadrennially if the board sees fit.

with the statute to determine the propriety or impropriety of appellant's demotion. The costs of this appeal are placed on the appellee.